IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN RICARDO MCBEAN,<br><br>*Defendant.* | Case No. 1:26-CR-163 |

**UNITED STATES' MOTION FOR PRETRIAL DETENTION**

COMES NOW, the United States of America, by and through undersigned counsel, and hereby moves the Court for an order that defendant Stephen Ricardo McBean shall be detained pending trial.[1] The defendant hacked into the victims' online accounts, stole their private, intimate images and videos, and sold them to leaks websites where they were published for public consumption. When the defendant was interviewed by law enforcement, he admitted that he hacked girls' online accounts daily, claiming more than a thousand victims over multiple years. Ongoing forensic examination of McBean's electronic devices has indeed revealed hundreds of potential hacking victims, as well as elaborate schemes he developed to obtain victims' login credentials and access their online accounts without detection or authorization. Review of one of McBean's cell phones has also revealed that he solicited and stored images and videos of child

[1] On August 11, 2026, the defendant had a contested detention hearing in the District of New Jersey and was ordered detained (*see* Dkt. 7), though no formal detention order appears on the docket. On September 10, 2026, the defendant made his initial appearance in the Eastern District of Virginia and asked for a second detention hearing. Undersigned counsel argued that he is not entitled to another one here, absent a motion to revoke the detention order by defense counsel. *See* 18 U.S.C. § 3145(b) (If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order). No such motion has been filed. Nevertheless, because a detention hearing was scheduled for September 14, 2026, the government files the instant Motion for Pretrial Detention.

sexual abuse, including depictions of children as young as toddlers. Incredibly, McBean engaged in this conduct while serving a term of state probation for essentially the same type of criminal conduct. He also presents a risk of nonappearance, as reflected by an active warrant issued for his failure to appear in municipal court in 2024. For the reasons that follow, no condition or combination of conditions can reasonably assure the defendant's appearance at future court proceedings or the safety of the community. Thus, the defendant should be detained pretrial.

## BACKGROUND

Since approximately 2022, the Federal Bureau of Investigation (FBI) has been investigating Website A, a criminal online forum that allows users to post and sell access to nude, sexually suggestive and/or sexually explicit images and videos of minors and adults. Among other things, Website A promotes a hack-for-hire service, in which users can pay hackers to access victims' online accounts without their consent and obtain illicit images. To date, the FBI has identified thousands of victims, including minors, whose illicit images and videos were hacked, leaked, or obtained via extortion, and posted on Website A.

During its investigation of this website, the FBI learned that an IP address registered to McBean was used to gain unauthorized access to the Snapchat accounts of AV-1 and AV-2. On the same day that McBean's IP address was used to access AV-2's Snapchat account, sexually explicit images and videos of AV-2 were stolen from her account and posted for sale on Website A. Website A advertised AV-2's stolen pictures and videos in an album titled with her first and last name. The album contained 59 images, 17 videos, and 16 "sex tapes" depicting AV-2. Among other things, the pictures and videos in the album showed AV-2 with her genitals exposed to the camera and AV-2 engaged in sexually explicit conduct with another individual, who were both purportedly under the age of 18 when the video was originally made. The AV-2 album became a

featured collection on Website A's homepage, where it was listed as a "[Website A] Exclusive." Worse still, AV-2's information was displayed on the "Snap Service" page as an example of a "vouch," or proof of a successful hack. The information included AV-2's true phone number, email address and date of birth in 2006.

According to AV-2, the images and videos taken from her Snapchat account and posted on Website-A have since been posted to several other websites. AV-2 also reported to the FBI that she now receives near-daily friend requests and messages from unknown individuals sending her links to her illicit content online.

On August 11, 2026, the FBI executed a federal search warrant at McBean's residence in Irvington, New Jersey. McBean was present at the search warrant and agreed to an interview with law enforcement. He was read his *Miranda* warnings and the interview was audio recorded.[2] During the interview, McBean admitted that he hacked AV-2's Snapchat account, stole her intimate images and videos, and sold them to Website A. He also admitted to conducting other, similar, hacks of victims' online accounts, stealing their intimate images and videos, and selling them to Website A and another leaks website. The defendant stated that he was currently on state probation for a similar offense. The defendant told law enforcement that he considers himself to be one of the top 5 hackers in the business. He said he has been doing this for multiple years and probably has over 1,000 victims. The defendant stated that he commits approximately 3-5 hacks per day and he saves and categorizes the material he steals in a cloud platform accessible via his cell phone.[3] The defendant also said that he worked with another offender on a collection of stolen

[2] On August 26, 2026, a copy of this recording was produced to defense counsel pursuant to the Protective Order entered in this case. Dkt. 6.

[3] Review of the defendant's cloud storage account is ongoing, but to date has revealed hundreds of folders for different victims and different collections of material.

sexually explicit content obtained via blackmail, though he claimed he did not do the blackmailing and only participated in the payment/business side of the scheme. The defendant admitted there was child sexual abuse material (CSAM) on his devices, which he said he got from Telegram. He said the CSAM would include teens all the way down to toddlers, though he claimed he did not intentionally download the toddler CSAM. The defendant was placed under arrest and charged via criminal complaint with a violation of 47 U.S.C. § 223(h)(2)(A) and 18 U.S.C. § 2. *See* Dkt. 1.

Pursuant to the search warrant, the FBI seized dozens of electronic storage devices from the defendant's residence, including cell phones, laptops, tablets, thumb drives, and SD cards. Forensic review of the defendant's devices is ongoing, however the FBI's review to date has revealed numerous images and videos of CSAM on the defendant's cell phone. The defendant purchased some of this CSAM on Telegram, where, in March 2026, he solicited a CSAM distributor for "new rape vids or sleeping vids[.]"

In addition to child sexual abuse material, the FBI also found in the defendant's devices evidence that the defendant operated various modeling scams to obtain sexually explicit content from girls. In one scheme, the defendant sent emails to girls who appeared to have a strong presence on social media. The emails appeared to come from a bathing suit company and claimed the company was seeking summer model affiliates. The email included a link to "apply now," which directed the victim to an Internet page that required the victim to enter their Apple iCloud login credentials.

In June 2026, AV-3 received the defendant's modeling email and, not knowing it was a scam, entered her Apple iCloud account information, which the defendant then captured. The defendant's cell phone contains a July 2026 Telegram chat with the administrator of two leaks

websites related to AV-3. In the chat, the defendant sent the administrator screenshots of a folder containing sexually explicit thumbnails of AV-3. The defendant proceeded to negotiate a price for the sale of the folder. After buying the folder for approximately $225, the leaks website published an album of 81 images and 64 videos depicting AV-3. The album includes videos of AV-3 engaged in masturbation in what appears to be a bedroom, as well as images and videos of AV-3's genitals.

The FBI interviewed AV-3, who reported that since her images and videos were stolen and published online, she has been threatened online and has suffered serious psychological harm. She described the experience as "mentally destroying."

In addition to hacking girls' accounts, stealing their intimate depictions, and selling the content, the FBI has also uncovered evidence that the defendant has threatened victims to create content for him, or else have their images published online. For example, in June 2025, a victim reported she had received threatening messages from iCloud account "gimmeyoass," *see* Exhibit 1 (under seal), which the defendant admitted during the search warrant belongs to him. In his messages to the victim, the defendant included screenshots of the victim's photos from her Snapchat "My Eyes Only" folder and demanded the victim "do what I say on FaceTime" or her photos would be leaked. Among the photos and videos that the defendant had stolen from the victim's account was a video of the victim and her ex-boyfriend having sex. The defendant said he would destroy her pictures if the victim did what he wanted on Facetime, adding, "if you haven't noticed you are being blackmailed." The defendant also sent the victim a screenshot of a leaks website. The defendant threatened to send the victim's photos to her workplace and referred to her by her full legal name. Later, the victim received a text message from another phone number, telling her, "Everything is now uploaded your life will be ruined[.]"

During the search of the defendant's residence, law enforcement found a yellow folder titled, "My Past Life." Inside the folder, law enforcement found handwritten papers, apparently detailing the targeting and sexual assault of a woman. *See* Exhibit 2.

On September 11, 2026, a grand jury in the Eastern District of Virginia returned a two-count Indictment charging the defendant with violations of 47 U.S.C. § 223(h)(2)(A) and 18 U.S.C. § 2 related to his victimization of AV-2 and AV-3. *See* Dkt. 11.

## LEGAL STANDARD

Pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). In making this determination, the Court considers the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
  (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
  (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g). "The burden of proof is on the government to demonstrate by a preponderance of the evidence that detention is necessary to assure the appearance of the defendant, or to

demonstrate by clear and convincing evidence that defendant poses a danger to the community." *United States v. Drake*, 2023 WL 213917, at *2 (W.D. Va. Jan. 12, 2023).

## ARGUMENT

Consideration of the Section 3142(g) factors weighs strongly in favor of detention.

### A. Nature and circumstances of the offense

The offense with which the defendant is charged is a serious crime that involves hacking victims' online accounts, stealing their intimate photos and videos, and selling the material to leaks websites to be published for public consumption. The FBI continues to identify victims as they examine the defendant's electronic devices, though the defendant has already stated he has amassed roughly 1,000 victims in the years since he began this scheme. The FBI has interviewed AV-2 and AV-3, as well as many other victims whose content appears on the leaks websites with which the defendant has partnered, and they uniformly report how devastating the impact of this conduct is on their lives.

### B. Nature and seriousness of danger to the public

The defendant presents a serious danger to the public. As stated above, he has been engaged in this criminal conduct for several years and victimized women right up until he was searched and arrested. Location monitoring, home confinement, and the installation of computer monitoring software will not adequately protect the public. For one thing, secret cell phones are cheap and easy to acquire. If the defendant obtained a device, he could easily continue his criminal conduct; computer monitoring software only works when Pretrial knows about an electronic device. But even if the defendant did not obtain a secret unmonitored cell phone, computer monitoring software only works insofar as it alerts pretrial to a violation that has already occurred. At that point, the damage to the victim is done. *United States v. Abdullahu*, 488 F. Supp. 2d 433,

444 (D.N.J. 2007) ("electronic monitoring and home confinement do not guarantee that [a] defendant will not ... endanger the community.").

Critically, the defendant was already on state probation for a similar state offense at the time he committed these crimes. The defendant was charged in 2021 with distribution of child pornography, possession of child pornography, cyber harassment, computer harassment, and "Invasion of Privacy – Disclose Sex Act without Consent." *See* Case No. MER21001686001 in Mercer County Superior Court, East Windsor, NJ. He was ultimately convicted of the Invasion of Privacy offense, which involved "hacking the victim's snapchat account, posting nude and sexual images/recording of the victim when victim was 16 years old to social media and then sending harassing messages via Instagram to the victim about the material being disclosed."

The defendant's prior conviction and probation did not deter him from committing identical crimes in this case. Thus, there is no reason to believe that pretrial monitoring will deter the defendant from engaging in the type of harmful conduct to which he has dedicated the last several years of his life. The risks he poses if released are immense.

**C. Weight of the evidence**

The weight of the evidence is extremely strong. The defendant's IP address was used to gain unauthorized access to AV-1 and AV-2's accounts. On the same day that AV-2's account was hacked, her stolen intimate images and videos were published on Website A. And the defendant admitted to that criminal conduct as well as to conducting other similar conduct on a daily basis. He said he stored and categorized the stolen material in a cloud platform accessible via his cell phone. And preliminary review of that cloud account has revealed hundreds of folders that appear to contain intimate images and videos of numerous girls. Furthermore, his Telegram account contains messages related to AV-3 and the sale of her stolen intimate images and videos

to a leaks website. Shortly after AV-3 received a scam email related to modeling (forensic evidence of which was found on the defendant's electronics), her material was posted on a leaks website. In short, this factor weighs strongly in favor of detention.

**D. History and characteristics**

The defendant is a legal permanent resident in the United States. He was born in Jamaica. Prior to his arrest, the defendant was on state probation in New Jersey, where he resided in a home with his mother, three brothers, and his brother's adult son. The defendant reported to Pretrial that he would continue to reside there if released. As discussed above, there is no reason to believe that if the defendant returns to this living arrangement his conduct will be any different from the criminal conduct in which he has engaged for the last several years.

Moreover, the defendant has a demonstrated history of non-appearance. Criminal history checks reveal an active municipal warrant issued by Ashbury Park Municipal Court in 2024 for the defendant's failure to appear for that case. The likelihood of him appearing in a different jurisdiction where he faces more serious criminal charges is even lower.

**CONCLUSION**

In consideration of the 18 U.S.C. § 3142(g) factors, there are no conditions other than detention that will reasonably assure the defendant's appearance at future court proceedings and the safety of any other person and the community.

Respectfully submitted,

By: /s/

Lauren Halper
Meredith Clement
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3700